FIRST UNION NATIONAL BANK, as Trustee for the Bondholders and Not in its Individual Capacity, by and Through its Servicing Agent, Heard, Goggan, Blair, Williams & Taxserv, LLC, Joint Venture, Appellees,

v.

DIAMONDS AND GOLD INCORPO-RATED, a Pennsylvania Corporation and Villa Development, LLC.

**Appeal of Villa Development, LLC, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 14, 2004.

Filed April 15, 2004.

Reargument Denied June 18, 2004.

Samuel C. Stretton, West Chester, for appellant.

Vito F. Canuso, Jr., Philadelphia, for Diamonds and Gold, appellee.

Before: BENDER, BECK, and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellant, Villa Development, LLC, asks to review the order entered in the Philadelphia County Court of Common Pleas, allowing Appellee, Diamonds and Gold Incorporated, to redeem real property previously sold to Appellant at a Sheriff's sale. We are asked to determine, *inter alia*, whether a petition to redeem property sold at a Sheriff's sale can be filed before the deed conveying the property to the Sheriff's sale purchaser is acknowledged. We hold that a petition to redeem property sold at Sheriff's sale cannot be filed until after the deed conveying the property to the purchaser is acknowledged. Accordingly, we vacate the order and remand for further proceedings.

¶ 2 The relevant facts and procedural history of this case have been gleaned from the certified record as follows. In June 1997, the City of Philadelphia and the School District of Philadelphia sold a portfolio of delinquent real estate tax liens to the Philadelphia Authority for Industrial Development ("PAID"). In turn, PAID sold the portfolio to First Union National Bank[1] ("First Union"), empowering First Union to collect the delinquent taxes through lawful means. Appellee owned one of the properties burdened with a delinquent tax lien, located at 932 North 2nd Street, Philadelphia, PA. On June 2, 2000, First Union petitioned the trial court for a rule to show cause why this property should not be sold at a Sheriff's sale to satisfy the delinquent tax lien. On July 20, 2000, the trial court granted the petition and ordered Appellee's property sold at a Sheriff's sale.

¶ 3 Appellant purchased Appellee's property at a Sheriff's sale held February 20, 2002. Appellant immediately made a deposit of $7000 on the total sale price of $40,100. Appellant had thirty (30) days, or until March 22nd, to pay the remainder of the money due. On March 19th, Appellant requested and received its first and only thirty (30) day extension of time to satisfy the purchase.[2]

¶ 4 During the extension period, on April 11, 2002, Appellee filed a petition for citation and rule to show cause why Appellee should not be able to redeem the property sold to Appellant.[3] Appellee informed the Sheriff's office of its petition, and asked the Sheriff's office not to settle on the property until the redemption issue was resolved. Nevertheless, on April 19th, the Sheriff's office accepted the balance of the payment due on the property from Appellant. Despite the Sheriff's acceptance of Appellant's April 19th payment, First Union, in a letter dated April 22nd, informed the Sheriff's office that Appellant had not timely complied with the terms of the Sheriff's sale, and asked the Sheriff's office to cancel the sale. In a letter dated May 13th, First Union informed Appellee of Appellant's alleged non-compliance with the terms of the Sheriff's sale, and advised Appellee to pay the balance due to First Union to avoid another Sheriff's sale.

---

1. Now known as Wachovia Bank.

2. One of the issues of factual dispute in this case is whether the thirty-day extension began to run from the date of the request, March 19th, or the date that the original thirty-day period expired, March 22nd.

3. Appellee's petition to redeem concedes that if the deed conveying the property to Appellant had been acknowledged, Appellee might be prohibited from redeeming the property because of the vacant property restriction contained in 53 P.S. § 7293(c).

¶ 5 On June 25, 2002, the trial court issued a rule to show cause why Appellee should not be able to redeem the property. The court subsequently held a hearing on the matter on July 23, 2002. At the conclusion of the July 23rd hearing, the court entered an order allowing Appellee to redeem the property upon payment of the appropriate sums of money. The order also instructed the Sheriff's office to return Appellant's funds paid.

¶ 6 Appellant filed a motion to reconsider on August 1, 2002. After a hearing on August 20th, the court denied Appellant's motion. The order further instructed Appellee to reimburse Appellant for the costs associated with the Sheriff's sale, plus legal interest on this sum up to July 23, 2002, the date of the court's original order. An appeal to this Court followed.

¶ 7 On appeal, this Court quashed Appellant's appeal because no final judgment had been entered. *First Union Nat. Bank v. Diamonds and Gold Inc.,* 823 A.2d 1032 (Pa.Super.2003) (table). On April 24, 2003, the trial court held a hearing to determine the exact amount of money, including interest, Appellee actually owed Appellant for the costs associated with the Sheriff's sale. In an order dated April 25, 2003, the court specified the final amount owed to Appellant. On May 7, 2003, this appeal followed.

¶ 8 Appellant raises the following issues for our review:

DID THE [TRIAL COURT] ERR IN GRANTING THE APPELLEE...THE RIGHT TO REDEEM THE REAL ESTATE PURCHASED BY THE APPELLANT...AT A PHILADELPHIA SHERIFF'S SALE SINCE THERE WAS NO REDEMPTION ALLOWED SINCE THE DEED WAS NOT ACKNOWLEDGED?

(A) DID [THE TRIAL COURT] ERR IN ALLOWING REDEMPTION SINCE THE REAL PROPERTY WAS VACANT FOR AT LEAST 90 DAYS BEFORE THE SHERIFF SALE, THE PROPERTY WAS NOT A RESIDENTIAL PROPERTY, AND THE PROPERTY HAD BEEN DELINQUENT IN TAXES FOR A PERIOD OF NINE YEARS?

DID THE [TRIAL COURT] ERR IN ALLOWING THE REDEMPTION OF THE REAL PROPERTY PURCHASED AT A PHILADELPHIA SHERIFF SALE SINCE...

(A) THE EVIDENCE DEMONSTRATED THE APPELLANT...COMPLIED WITH ALL CONDITIONS OF THE SHERIFF SALE;

(B) [THE TRIAL COURT] ERRED IN FINDING THERE WAS NOT A TIMELY PAYMENT BY THE APPELLANT...OF THE BALANCE DUE ON THE SHERIFFS SALE AND FURTHER ERRED BY HOLDING THERE WAS NOT A VALID THIRTY DAY EXTENSION FOR THE APPELLANT...TO PAY THE MONIES DUE FOR THE SALE;

(C) THE PROPERTY WAS VACANT AND COULD NOT BE REDEEMED PURSUANT TO 53 P.S. 7293. THE PROPERTY WAS NINE YEARS IN TAX DELINQUINCY[;]

(D) THERE COULD NOT BE A REDEMPTION SINCE THE SHERIFF'S DEED WAS NOT ACKNOWLEDGED[?]

(Appellant's Brief at 4–5).

¶ 9 Appellant first argues that under 53 P.S. § 7293, which controls the right to redeem property sold under a delinquent tax claim, a property owner cannot redeem property sold at a Sheriff's sale until after the deed conveying the

property to the purchaser is acknowledged. Appellee maintains that the deed in this case was not acknowledged. Thus, Appellant concludes Appellee's petition should have been dismissed as premature. We agree.

¶ 10 Section 7293 provides in pertinent part:

§ **7293. Redemption**

(a) The owner of any property sold under a tax or municipal claim, or his assignees, or any party whose lien or estate has been discharged thereby, may, except as provided in subsections (c) and (d) of this section, **redeem the same at any time within one year from the date of the acknowledgement of the sheriff's deed therefor,** upon payment of the amount bid at such sale; the cost of drawing, acknowledging, and recording the sheriff's deed; the amount of all taxes and municipal claims, whether not entered as liens, if actually paid; the principal and interest of estates and encumbrances, not discharged by the sale and actually paid; the insurance upon the property, and other charges and necessary expenses of the property, actually paid, less rents or other income therefrom, and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments. If both owner and creditor desire to redeem, the owner shall have the right so to do only in case he pays the creditor's claim in full. If more than one creditor desires to redeem, the one who was lowest in lien at the time of sale shall have the prior right, upon payment in full of the claim of the one higher in lien. Within the year, one who was lower in lien may redeem from one higher in lien who has already redeemed, and the owner may redeem from him; and so on throughout, in each case by paying the claim of one whose right was higher; and one higher in lien may redeem from one lower in lien, unless his claim is paid; but in each case the right must be exercised within the year.

(b) Any person entitled to redeem may present his petition to the proper court, setting forth the facts, and his readiness to pay the redemption money; whereupon the court shall grant a rule to show cause why the purchaser should not reconvey to him the premises sold; and if, upon hearing, the court shall be satisfied of the facts, it shall make the rule absolute, and upon payment being made or tendered, shall enforce it by attachment.

\*    \*    \*    \*    \*    \*

53 P.S. § 7293 (emphasis added). This Court explained:

[I]n interpreting [the redemption statute], our legislature has set forth various guidelines for ascertaining its correct meaning. First, under 1 Pa.C.S.A. § 1928(c), this redemption statute is to be liberally construed so as to effect its objective and to promote justice. Also, another relevant consideration in ascertaining the meaning is that "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

*City of Philadelphia v. Taylor,* 318 Pa.Super. 435, 465 A.2d 33, 35 (1983).

¶ 11 Title 21, Section 42 of the Pennsylvania Statutes, Deeds and Mortgages, provides that a deed must be acknowledged before it can be recorded. 21 P.S. § 42. The statute reads:

§ **42. Deeds to be acknowledged before recording**

All bargains and sales, deeds and conveyances of lands, tenements and hereditaments, in this province, may be recorded in the said office; but before the

same shall be so recorded, the parties concerned shall procure the grantor or bargainer named in every such deed, or else two or more of the witnesses (who were present at the execution thereof), to come before one of the justices of the peace of the proper county or city where the land lie, who is hereby empowered to take such acknowledgment of the grantor, if one, or of the grantors, if more.

21 P.S. § 42. Regarding proof of acknowledgment, the statute reads in pertinent part:

### § 47. Certificate of acknowledgement of sheriff's deed to be sufficient evidence

The certificate of the prothonotary of any court of this commonwealth to an acknowledgement of a sheriff's deed, heretofore made, although not under seal of office, shall be sufficient evidence of such acknowledgement, notwithstanding no other record was made thereof at the time of such acknowledgement: Provided, That the provisions of this section shall not be construed to affect any *bona fide* holder or purchaser, who had neither actual or constructive notice of the execution of such sheriff's deed.

21 P.S. § 47.

¶ 12 At the reargument hearing in the instant case, Captain Robert H. Danford ("Captain Danford"), deputy Sheriff and commander of the real estate division of the Philadelphia Sheriff's office, testified concerning the procedure his office follows after a Sheriff's sale. A successful purchaser of real property at a Sheriff's tax lien sale in Philadelphia must deposit at least 10% of the purchase price with the Sheriff at the time of the sale. (N.T. Reargument Hearing, 8/20/02, at 9). The purchaser then has thirty (30) days to settle the remaining balance with the Sheriff's office. (*Id.*) The Sheriff's office

may grant an additional thirty-day final payment extension upon a request from the purchaser. (*Id.* at 9–12). After final payment, the Sheriff issues a deed conveying the property to the purchaser, which is subsequently acknowledged by the prothonotary. (*Id.* at 9, 20).

¶ 13 Captain Danford also read into the record excerpts from a pamphlet distributed by the Philadelphia Sheriff's office, which provides information concerning Sheriff's sales in Philadelphia. (*Id.* at 15–16). This pamphlet contained the following passage: "Regular Redemption Period. This period **begins on the date of the acknowledgment** of the deed, which is usually two weeks after final settlement with the sheriff and lasts one year from the date of the acknowledgement of the deed." (*Id.* at 16) (emphasis added). On direct examination, Captain Danford consistently stated his opinion that Appellant had met all the terms and conditions of the February 20, 2002 Sheriff's sale by making final payment to the Sheriff's office on April 19th. (*Id.* at 14, 17).

¶ 14 Nevertheless, on cross-examination Captain Danford testified that "normal procedure" of the Sheriff's office is to stay any settlement of a Sheriff's sale upon notice that the court is considering a petition to redeem. (*Id.* at 18). Typically, the Sheriff's office refuses final payment from the Sheriff's sale purchaser until the court resolves the petition. (*Id.* at 19). Because Appellee's petition to redeem was filed on April 11th, Captain Danford opined that the Sheriff's Office should have refused final payment from Appellant on April 19th, pending the outcome of the petition. (*Id.*) On redirect examination, Captain Danford reiterated his opinion that Appellant had complied with the terms of the sale when the Sheriff's office accepted final payment on April 19th. (*Id.* at 28).

¶ 15 Appellant purchased Appellee's property at the February 20, 2002 sheriff's sale, and made an initial deposit of more than 10% of the purchase price. On March 19th, near the end of Appellant's initial settlement period, Appellant asked and received a thirty-day extension of time to settle the purchase. During this extension, on April 11th, Appellee filed its petition to redeem. The Sheriff's office accepted final payment from Appellant on April 19th, but all parties agree the Sheriff never issued a deed conveying the property to Appellant. Likewise, the parties agree that such a deed was not acknowledged. On June 25, 2002, the trial court issued a citation and rule to show cause why Appellee should not be allowed to redeem the property.

█ ¶ 16 Acknowledgement of a deed is a critical step in the transfer of real property. *See* 21 P.S. § 42. The language of Section 7293 plainly and unambiguously states that the redemption period begins **after** the Sheriff's deed conveying the property to the purchaser is acknowledged. *See* 53 P.S. § 7293; *Taylor, supra.* This statute is consistent with the rules promulgated by the Philadelphia Sheriff's office, to the extent each states the redemption period begins after acknowledgment of the deed conveying the property to the Sheriff's sale purchaser. (*See* N.T. Reargument Hearing at 16). In essence, a party seeking to redeem property has no claim against a Sheriff's sale purchaser until the purchaser satisfies the terms of the sale and is given actual title to the property. Here, Appellee's petition to redeem, and the court's citation and rule to show cause on this petition, were entered before the property was conveyed to Appellant *via* the Sheriff's deed, and before this deed was acknowledged. Thus, the trial court should have denied Appellee's petition as premature without prejudice to

refile it after acknowledgment of the deed. *See* 53 P.S. § 7293. *See also City of Philadelphia v. Chicken's Place, Inc.,* 388 Pa.Super. 198, 565 A.2d 182 (1989) (assessing petition to redeem property sold at tax sale filed after sheriff's deed conveying property to purchaser was acknowledged); *City of Philadelphia v. Keilyk,* 380 Pa.Super. 362, 551 A.2d 1094 (1988) (assessing petition to redeem property sold at tax sale filed after sheriff's deed conveying property to purchaser was recorded); *City of Philadelphia v. Watkins,* 343 Pa.Super. 380, 494 A.2d 1135 (1985) (assessing petition to redeem property sold at tax sale filed after sheriff's deed conveying property to purchaser was acknowledged); *City of Philadelphia v. Taylor,* 318 Pa.Super. 435, 465 A.2d 33 (1983) (assessing petition to redeem property sold at tax sale filed after sheriff's deed conveying property to purchaser was acknowledged); *Paul J. Dooling Tire Company v. City of Philadelphia,* 789 A.2d 364 (Pa.Cmwlth.2001) (assessing petition to redeem property sold at tax sale filed after sheriff's deed conveying property to purchaser was acknowledged). The Sheriff's office general practice of preventing a purchaser from settling when there is an outstanding petition to redeem is not dispositive of this issue. The court's failure to dismiss Appellee's premature petition to redeem was a procedural error at the trial court level, not at the Sheriff's office. However, our inquiry does not end here.

█ ¶ 17 Due to our determination that Appellee's petition to redeem should have been dismissed as premature, we must now address Appellant's claim that it satisfied the terms of the Sheriff's sale. Appellant maintains the Sheriff's office granted it a thirty-day extension from March 22, 2002, upon expiration of the original thirty days to satisfy the Sheriff's sale. Appellant avers it made timely final settlement

with the Sheriff's office on April 19th, within thirty days of March 22nd. Appellant also argues that the Sheriff's testimony from the March hearing confirms Appellant satisfied the terms of the sale as of April 19th. For these reasons, Appellant challenges the trial court's conclusion that Appellant did not timely comply with the terms of the Sheriff's sale. Appellant concludes the court should have dismissed Appellee's petition to redeem and ordered the deed to be transferred to Appellant and acknowledged. We agree.

¶ 18 Instantly, all parties agree Appellant had thirty days from the February 20, 2002 sale, or until March 22nd, to settle in full with the Sheriff's department on the outstanding purchase monies. It is also undisputed that Appellant received a thirty-day extension on March 19th, three days prior to the original settlement deadline. The question becomes whether the thirty day-extension began to run from the date the Sheriff's department granted the request (March 19th) or from the date the settlement payment was originally due (March 22nd).

¶ 19 During direct examination, Captain Danford testified that the initial thirty-day settlement period following the February 20th Sheriff's sale ended on March 22nd. (N.T. Reargument Hearing at 11). He further stated that the file in this case indicated he had granted Appellant a thirty-day extension on March 19th. (*Id.* at 12–13). Captain Danford repeatedly stated that Appellant had fully complied with all terms and conditions of the Sheriff's sale as of April 19th. (*Id.* at 14, 17).

¶ 20 On cross-examination, however, Appellee suggested the Sheriff's office granted the extension only until April 18th:

[Appellee]: Am I correct that the extension that was granted was until April 18th, 2002?

[Captain Danford]: It's April 18th, but we have people asking us for extensions all of the time. And April 18th, we are in no hurry to mark terms of sale [not complied with]. We're involved in conducting Sheriff's sales. Eventually we get around to it.

[Appellee]: In fact, April 19th is one day after the extension date that was granted by the Sheriff's office; am I correct?

[Captain Danford]: That's correct.

[Appellee]: I have no further questions.

[Appellant]: A bit of redirect, because I believe there has been a misapprehension to the time frames in this case.

[Appellee]: I'm going to object to that statement and ask that it be stricken.

The Court: And I'll absolutely grant it. You are supposed to ask questions.

[Appellant]: Not a problem, your Honor.

### REDIRECT EXAMINATION BY [APPELLANT]

[Appellant]: Captain Danford, what is the date 30 days after February 20th, 2002?

[Captain Danford]: What is the date after February?

[Appellant]: Yes.

[Captain Danford]: I'm sorry. February?

[Appellant]: 30 days from February 20th, 2002? What's the 30th date from that date?

[Captain Danford]: I would say its March 18th. I would have to calculate.

[Appellant]: Can you count? If you count from the calendar, my—

[Appellee]: Objection. Asked and answered.

The Court: He said March 18th, '02. It's not your testimony. Do you understand that?

[Appellant]: Yes, I do, your honor, yes. (*Id.* at 25–26). This exchange reveals Captain Danford's confusion surrounding the dates of the extensions and deadlines in this case. Captain Danford agreed to Appellee's representation that April 18th was the extension deadline while under the mistaken assumption that the original thirty-day settlement period ended on March 18th, as opposed to March 22nd, which he had earlier claimed. (*Id.* at 11). Thus, Captain Danford was attempting to calculate the extension deadline from the date he believed to be the last day of the original settlement period. Captain Danford tried to explain the inconsistencies in his testimony, as follows:

> [Captain Danford]: When we're going to mark [a file] terms of sale [not complied with]—and you have to realize also, I have no knowledge personally of this one. We process hundreds of these at a time. We sell hundreds of properties at a time. Tomorrow we have a hundred more coming up, and I'm trying to give you a ball park figure of what we do.
> [Appellant]: I want to clarify for the court, because there has been a lot of testimony. [Appellant] complied with the terms as your file reflects?
> [Captain Danford]: As my file reflects..
> [Appellant]: Complied with the terms and conditions of the Sheriff's sale?
> [Captain Danford]: That's correct. If someone asked us for a 30–day postponement, at the end of that 30 days, we're not lying in wait to mark it terms of sale [not complied with]. We're just much to busy. We have to do it in a timely and very formal manner. It's a lot of work.

(*Id.* at 27–28).

¶ 21 Based on this testimony, we conclude the thirty-day extension granted by the Sheriff did not begin until March 22, 2002, upon expiration of the original settlement period. *See generally Johnson v. Southeastern Pennsylvania Transportation Authority,* 524 Pa. 209, 570 A.2d 71 (1990) (stating "left to our own devices, we would understand 'thirty day extension' to mean an extension to run thirty days from the date the answer was originally due"); *Commonwealth v. Swint,* 488 Pa. 279, 412 A.2d 507 (1980) (where trial was required to begin by May 27th, and trial court granted 60–day extension on May 4th, deadline extended from May 27th to July 27th). *Compare Vision Service Plan of Pennsylvania v. Pennsylvania AFSCME Heath and Welfare Fund,* 326 Pa.Super. 474, 474 A.2d 339, 341, n. 1 (1984) (rejecting argument that twenty-day extension for preliminary objections should run from date response was originally due, where extension was clear that it ran from date of agreement). Thus, Appellant made timely final settlement on April 19th. Our conclusion is consistent with Captain Danford's repeated assertions that Appellant had complied with all the terms and conditions of the Sheriff's sale as of April 19th. Moreover, had Appellant waited until March 22nd to request a thirty-day extension, his extension clearly would have run until Monday, April 22nd.[4] Appellant should not be penalized for asking for an extension early, before the final day of the original settlement period. Accordingly, we reject the court's conclusion that Appellant did not timely comply with the terms of the Sheriff's sale.

¶ 22 Finally, we must address Appellee's suggestion that its April 11, 2002 petition to redeem could be construed as a petition to set aside the sale under the Pennsylvania Rules of Civil Procedure Rule 3132.

---

4. The thirtieth day following March 22nd was Sunday, April 21st. Thus, Appellant would have had until Monday, April 22nd to pay the remaining monies.

Appellee argues that Rule 3132 empowers the court to set aside a Sheriff's sale before the Sheriff's deed has been issued to the purchaser. Appellee believes the circumstances surrounding this case, including Appellant's allegedly untimely compliance with the terms of the Sheriff's sale, warranted court intervention under Rule 3132. Thus, Appellee asserts that the court's order should be affirmed under Rule 3132, even if the redemption petition was premature under Section 7293. We disagree.

¶ 23 Rule 3132 states:

**Rule 3132. Setting Aside Sale.** .

Upon petition of any party in interest before delivery of the personal property or of the sheriff's deed to real property, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances.

Pa.R.C.P. 3132.

When reviewing a trial court's ruling on a petition to set aside a sheriff's sale, it is recognized that the trial court's ruling is one of discretion, thus a ruling will not be reversed on appeal absent a clear demonstration of an abuse of that discretion. ... The burden of proving circumstances warranting the exercise of the court's equitable powers is on the petitioner. **Courts have entertained petitions and granted relief where the validity of sale proceedings is challenged, or a deficiency pertaining to the notice of sale exists or where misconduct occurs in the bidding process.** *National Penn Bank v. Shaffer,* [ ] 672 A.2d 326 ( [Pa.Super.] 1996).

*Provident Nat. Bank, N.A. v. Song,* 832 A.2d 1077, 1081 (Pa.Super.2003) (some internal citations omitted) (emphasis added).

■ ¶ 24 Initially, we note Appellee did not file a "petition to set aside Sheriff's sale" in this case. Appellee filed a petition to redeem specifically based on Section 7293, and the trial court made clear it responded to Appellee's petition as a petition to redeem, granting a citation and rule to show cause why the property should not be redeemed and ultimately permitting redemption. Neither Appellee's petition nor the trial court's opinion mentions Rule 3132, or speaks about "setting aside" the Sheriff's sale. Further, neither mentions a challenge to the sale proceedings or a deficiency in the notice of sale. *See id.* Under these circumstances, we are reluctant to construe Appellee's petition to redeem as a petition to set aside the sale under Rule 3132. Nevertheless, assuming *arguendo* that the court set aside the sale under Rule 3132, we must still vacate the court's order, because of our holding that Appellant did comply with all terms and conditions of the Sheriff's sale.

¶ 25 For the foregoing reasons, we hold that a petition to redeem property sold at Sheriff's sale cannot be filed until after the deed conveying the property to the Sheriff's sale purchaser is acknowledged. Thus, we vacate the court's order permitting Appellee to redeem the property sold to Appellant at the February 20, 2002 Sheriff's sale.[5] We remand to the trial court to enter an order instructing the Philadelphia Sheriff's office to issue a deed conveying the property in question to Appellant, in compliance with the terms of the Sheriff's sale.

---

5. Due to our holding that Appellee's petition to redeem was prematurely filed, a discussion of Appellee's issues related to the applicability of 53 P.S. §§ 7284 and 7293(c), concerning limitations on the right to redeem, is not appropriate at this juncture.

¶ 26 Order vacated; case remanded with instructions. Jurisdiction is relinquished.